UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE EARL HERRING, | ) |
| | ) |
| Plaintiff, | ) 06 C 2412 |
| | ) |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| The VILLAGE of NEW LENOX, | ) |
| Sergeant P. NELSON, Officer E. MARKS, | ) |
| Officer J. CASPER, Officer P. GRIFFIN, | ) |
| and Officer B. WOJOWSKI, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is Defendants Nelson, Marks, Casper, Griffin, and Wojowski's Motion for Summary Judgment as to Count I of the Complaint. For the following reasons, the Motion is denied.

### I. BACKGROUND

**A. Facts**

The court notes at the outset that the parties portray vastly differing accounts of the events of May 2, 2004. Discrepancies in the parties' explanations of these events are noted below. Plaintiff Willie Earl Herring ("Herring") is a resident of the State of Illinois, with a mailing address in Gardner, Illinois. Defendants are the Village of New Lenox, Illinois, and individuals who were at all relevant times duly appointed Police Officers of the Village of New Lenox.

The parties agree that on May 2, 2004, Herring was a guest at the Walona Hotel in New Lenox. At some point during that day, Herring became confused and disoriented. Herring asserts that he experienced a "nervous brake [sic] down," while Defendants assert that Herring overdosed on cocaine. In any event, Herring jumped through a glass window in his hotel room, and began walking down Illinois Route 30, while bleeding from his arms, legs, and face. Defendants assert that the temperature was in the low 40's Fahrenheit, and that Herring was clad in only shorts, socks, and shoes. New Lenox Police Officers eventually arrived on the scene, and inquired as to Herring's identity and how he acquired the lacerations. Defendants assert that Herring was "in an excited delirium state, and appeared to exhibit symptoms of a drug overdose." Herring then ran east bound, into traffic on Route 30. Defendants assert that Herring was nearly hit by two vehicles.

Herring asserts that in running on Route 30, he was merely attempting to reach "other citizens" at a nearby White Hen Pantry. However, the Defendant Police Officers concluded that Herring was a danger to himself and others, and in need of medical attention. Defendant Officer Marks therefore halted traffic on Route 30, and the Defendant Officers apprehended Herring using what they describe as a reasonable amount of force, and took him to an ambulance that had been called to the scene. Herring asserts that while he was being apprehended by the Defendant Officers, they tackled him violently, forced their knees into his back, kneed and kicked him in the ribs, forcibly twisted his left thumb, and violently raised him up from the ground. Herring also asserts that a Defendant Officer punched him in the head after he had been taken into custody. Herring does not specify which particular Officers struck him. In addition, Herring asserts that a Will County Deputy not a party to this case stated, "If you want the pain to stop, tell me what you did and I will make the pain go away."

Defendants assert that Herring was acting in an uncontrollable manner and needed to be restrained for his own safety, and the safety of the Officers and emergency medical personnel. Defendants further assert that after Herring was placed into the ambulance, he was combative, spoke incoherently, and resisted medical treatment. Defendants also assert that emergency medical personnel prevented Herring from going into respiratory arrest. Silver Cross Hospital Emergency Room records show that Herring remained combative upon his arrival at the Hospital, tested positive for cocaine, and suffered from neck pain and blunt trauma to the head.

## B. Procedural History

On May 1, 2006, Herring filed a pro se three-count Complaint, pursuant to 42 U.S.C. § 1983, in the Northern District of Illinois against the Village of New Lenox and the Defendant Police Officers. Count I of this Complaint alleges excessive force against the Defendant Police Officers. Herring asserts that the May 2, 2004 incident resulted in injuries to his head and body, and caused him to "suffer great pain, suffering and mental anguish." Count II asserts a claim of False Imprisonment against the Defendant Police Officers. Count III alleges the Village of New Lenox failed to properly instruct, supervise, and control its Police Officers.

On May 3, 2006, the court issued a Minute Order in which it dismissed the False Imprisonment Count (Count II), finding that there was probable cause to detain Herring. In that Minute Order, the court improvidently dismissed the entirety of Count III of the Complaint. The court now amends its May 3, 2006 Minute Order to indicate that Count III of Herring's claim is dismissed as to False Imprisonment only. See FED. R. CIV. P. 60(a); Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007) ("there can be no liability under Monell for failure to train when there has been no violation of plaintiff's constitutional rights."); Treece v. Hochstetler, 213 F.3d 360,

364 (7th Cir. 2000) ("it is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[] [is] liable on the underlying substantive claim.'") (quoting Tesch v. County of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998)). Count III of Herring's Complaint as to excessive force survives. See Jenkins, 487 F.3d at 492 ("a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation . . . .").

The Defendant Officers filed their Motion for Summary Judgment as to Count I of the Complaint on October 25, 2006. Herring declined to file a formal Response to this Motion, electing to stand on his verified Complaint. Seventh Circuit caselaw supports Herring's unconventional method of responding to Defendants' Motion for Summary Judgment. See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996) (Posner, J.) (indicating that a verified complaint is a sufficient response to a motion for summary judgment, because a signed declaration under the penalty of perjury that the complaint is true converts the complaint, or, more accurately, the factual assertions within the complaint, into an affidavit.). Defendants' Motion for Summary Judgment as to Count I of the Complaint is therefore fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In order to survive a motion for summary judgment, the nonmoving party must identify specific facts that show a genuine triable issue of material fact. See Murphy v. ITT Technical Services,

Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996).

When adjudicating a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[T]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The court must therefore "look at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." Payne, 377 F.3d at 770.[1]

---

[1] In Payne, the Seventh Circuit determined that genuine issues of material fact existed regarding a confrontation between the Plaintiff and a police officer. "In [Payne's] Complaint, the plaintiff claimed to have suffered a fractured wrist as a result of the arrest. In her Local Rule 56.1(b)(3)(A) Response to the Defendant's Statement of Facts, the plaintiff admitted that she never, in fact, fractured her wrist . . . Payne protested that the handcuffs were too tight, that she could not feel her hands, that she was in pain, but the police officers did not loosen the handcuffs or remove them until she arrived at the police station. An officer at the police station filled out a physical examination form and noted that Payne complained that her left wrist and fingers were hurting and going numb . . . Of course, Officer Pauley's story differs significantly. In his version

5

## B. Defendants' Motion for Summary Judgment as to Count I

The court determines that in this case, there are genuine disputes of material fact regarding the amount of force the Defendant Police Officers used against Herring that require a trial to resolve. As the court has indicated, the parties provide two very different accounts of the events in question. Defendants assert that Herring was cut in numerous places on his body, appeared to be suffering from an overdose of cocaine, was running in and out of traffic on Route 30, endangering himself and others, and was combative with police and emergency medical personnel. Defendants assert that Herring was taken into custody with a minimal amount of force. Defendants have offered the sworn affidavits of numerous witnesses in support of these assertions. Herring does not deny that he was cut and bleeding, nor does he deny that he was running on Route 30 on the day in question. However, Herring argues that by running on Route 30, he was merely trying to reach individuals at a nearby White Hen Pantry, and that New Lenox Police Officers beat him needlessly. Herring offers his verified Complaint in support of his assertions. At the summary judgment stage of this case, the court may not weigh the credibility of these competing explanations of the events of May 2, 2004. See id. The court "cannot choose the version of the story that seems more logical based on the pleadings and testimony before [it]. It is the task of the district court judge . . . to give [Herring] the benefit of the doubt." Id. at 775 n.3.

---

he never hollered at Payne, never badgered her, swore at her, used derogatory language or hit or bumped her in any manner, never unsnapped his holster, never raised his fists or threatened to kill her, and did not yank her arm or otherwise treat Payne roughly while arresting her. Instead he claims that Payne screamed obscenities at him, disobeyed his orders to stay away from the squad car, and disobeyed his orders to stop trying to move the vehicle from the damaged property. He also claims that she incited the crowd and resisted arrest." Payne, 337 F.3d at 774-75, n.3. On remand to the district court, no medical or surgical records were ever produced by Payne.

6

Finally, the court must address the question of whether the Defendant Police Officers are entitled to qualified immunity. In ruling upon a qualified immunity defense in a § 1983 action, the court must first ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court answers this question in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. Put another way, the court must inquire into whether a reasonable police officer would understand that his or her actions violate the right in question. Id. It is well established that "the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Id. (citing Graham v. Connor, 490 U.S. 386 (1989)).

In this case, Herring alleges, *inter alia*, that the Defendant Police Officers kneed and kicked him in the ribs while apprehending him, and punched him in the head after he had been taken into custody. Seventh Circuit caselaw indicates that a closed-fist blow to the head of a suspect can constitute deadly force, and is unreasonable unless "'the suspect threatens the officers with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm.'" Sallenger v. Oakes, 473 F.3d 731, 740 (7th Cir. 2007) (quoting Tennessee v. Garner, 471 U.S. 1 (1985)). Although Herring had caused injury to himself by jumping through a hotel room window, there is no indication that he brandished a weapon at any time during this incident, or that he posed any threat of serious physical harm after he had been taken into custody. The court finds that a reasonable police officer would understand that needlessly kneeing and kicking a suspect in the ribs, or delivering a closed-fist blow to the head of a suspect already in custody, would violate

7

that suspect's Fourth Amendment rights. See Saucier, 533 U.S. at 201. The Defendant Police Officers are therefore not entitled to a defense of qualified immunity. The court does not make any factual determination as to whether a Defendant Police Officer actually delivered such a closed-fist blow, or whether the Defendant Police Officers needlessly kneed and kicked Herring in the ribs, as he alleges. The court only determines that Herring has presented sufficient evidence to create a genuine dispute of material fact as to these questions.

### III. CONCLUSION

The court denies Defendants' Motion for Summary Judgment as to Count I of Herring's Complaint. Taking the record in the light most favorable to Herring, as the court must at this stage, the court concludes that a trier of fact could determine that the Defendant Police Officers used excessive force during and after apprehending Herring. "A trier of fact might well rule the other way too, of course; nothing [the court has said] here should be understood to imply that [Herring] has already proven his case." See Pantoja v. American NTN Bearing Manufacturing Corp., – F.3d –, No. 06-1252, slip op. at 18 (7th Cir. Aug. 8, 2007).

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: August 20, 2007